O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS PLAISTED,<br><br>                    Plaintiff,<br>       v.<br><br>THE DRESS BARN, INC., and DOES 1–100, inclusive,<br><br>                    Defendants. | Case No. 2:12-CV-01679-ODW (SHx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [49]** |

## I.   INTRODUCTION

California law provides a panoply of protections for employees, including mandatory rest and meal breaks, overtime, vacation time, timely wage payments, and reasonable seating.  Plaintiff Alexis Plaisted, a former store manager for Defendant The Dress Barn, Inc., has alleged violations of many of these provisions in her Complaint but produced scant evidence to establish any genuine issues of material fact.  After considering each of Plaisted's 10 remaining causes of action, the Court finds that Dress Barn is entitled to judgment as a matter of law on all claims and **GRANTS** its Motion for Summary Judgment.[1]

///

---

[1] Having carefully considered the papers filed in support of and in opposition to Dress Barn's Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L. R. 7-15.

## II. FACTUAL BACKGROUND

Plaintiff Alexis Plaisted began her employment with Dress Barn on June 4, 2009, as an Assistant Manager at the company's Alpine, California store. (SUF 12.) Dress Barn specializes in women's clothing that it sells in its retail stores throughout the United States. (SUF 1.) Each retail store employs 1 store manager, between 2 and 4 assistant managers, and several non-managerial associates. (*Id.*) Around August 2009, Plaisted transferred to Dress Barn's Mira Mesa, California store to continue work as an Assistant Manager. (SUF 18.) On December 14 of that year, she was promoted to the Store Manager position. (SUF 19.) Dress Barn then terminated Plaisted's employment on December 13, 2011. (SUF 46.)

Not wanting to take her termination sitting down, Plaisted filed a Complaint in Los Angeles Superior Court against Dress Barn on January 24, 2012, alleging 11 claims: (1) failure to provide meal periods, Cal. Labor Code §§ 226.7, 512; (2) failure to provide rest periods, *id.* § 226.7; (3) failure to pay overtime compensation, *id.* §§ 510, 1194, 1198; (4) failure to pay compensation at the time of termination, *id.* §§ 201, 202, 203, 208; (5) failure to provide accurate wage statements, *id.* § 226 *et seq.*; (6) failure to pay wages at least twice per month, *id.* § 204; (7) failure to provide suitable and reasonable seating, Cal. Code Regs. tit. 8, § 11070; (8) failure to pay vacation compensation at the time of termination, Cal. Labor Code § 227.3; (9) conversion, Cal. Civ. Code §§ 3336 and 3294; (10) civil penalties pursuant to the California Private Attorney General Act, Cal. Labor Code § 2698 *et seq.*; and (11) unlawful business practices, Cal. Bus. & Prof. Code § 17200 *et seq.* (ECF No. 1, Ex. A.) Dress Barn removed the case to this Court, and the Court subsequently dismissed Plaisted's ninth claim for conversion for failure to state a claim. (ECF No. 15.) On December 28, 2012, Dress Barn moved for summary judgment. (ECF No. 49.)

///
///

### III. LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial. *Id.*; Fed. R. Civ. P. 56(c). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### IV. DISCUSSION

Dress Barn contends that its formal policies provide for, and mandate that, all California hourly employees take adequate rest and meal breaks. Store managers such as Plaisted have the ultimate responsibility of enforcing these breaks and can make timecard corrections as needed. Plaisted responds that Dress Barn gave her too much work to complete, which effectively forced her to work off the clock. Plaisted now claims she is owed wages and accrued vacation for those off-the-clock hours. The Court considers each of these arguments and others in turn.

### A. Meal and Rest Breaks and Off-the-Clock Overtime

Under California law, an employee working between 5 and 6 hours per day must receive a meal break of at least 30 minutes, unless such break is waived by mutual consent. Cal. Labor Code § 512(a). An employer may not require an employee to work during a mandated rest or meal break. *Id.* § 226.7(a). But an employer "need not ensure that the employee does no work" during breaks. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1034 (2012). Rather, "[b]ona fide relief from duty and the relinquishing of control satisfies the employer's obligations, and work by a relieved employee during a meal break does not thereby place the employer in violation of its obligations and create liability for premium pay." *Id.* at 1040–41. That said, "[a]n employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks." *Id.* at 1040.

Dress Barn argues that its break policy for California hourly employees requires employees working more than 5 hours in a day to take a 30-minute (or greater) meal break that must begin before the end of the fifth hour. (Hinck Decl. Exs. A, C.) It is the employee's obligation to take a meal break within the designated time periods. (*Id.*) The policy further provides that hourly employees are also entitled to a paid 10-minute rest period for every 4 hours worked. (*Id.*) Dress Barn policy provides that the store manager is responsible for setting the rest and meal breaks and ensuring that employees take the breaks as scheduled. (Hinck Dep. 418:15–19, Dec. 17, 2012; *see* Plaisted Dep. 67:3–7, Oct. 30, 2012.) If an employee is unable to take a rest or meal break to which she is entitled, Dress Barn pays that employee for an additional hour. (Hinck Decl. ¶ 5.)

Prior to April 2011, an associate under these circumstances had to notify her store manager or the Payroll or HR Departments in order to receive the extra hour. (*Id.*) Beginning in April 2011, a new timekeeping system automated this process by
/ / /

1  adding an extra hour to an associate's pay automatically if she missed or took a late
2  meal break. (*Id.*)

3  Dress Barn policy also prohibits off-the-clock work, and employees are
4  required to accurately report all hours worked in the company's timekeeping system.
5  (Hinck Decl. ¶¶ 6–7, Ex. C.) The store manager has the ultimate responsibility of
6  ensuring that all employees accurately record their time. (Plaisted Dep. 73:9–23;
7  184:11–16.) They have the ability to change timecards if there are any errors. (Hinck
8  Decl. ¶ 10; Plaisted Dep. 182:17–22.) Thus, if a store manager works off the clock,
9  the store manager can then go into the time system and record those additional hours.
10 (Plaisted Dep. 79:3–6.)

11 Finally, at the end of each week, Dress Barn requires all employees to review a
12 Final Payroll Report showing their time punches for the week. (*Id.* at ¶¶ 9–10 &
13 Ex. D.) Employees are required to sign the timecard if they agree with their timecards
14 or describe why they disagree with them. (*Id.* at ¶ 10; *see id.* Ex. D.) The signature
15 also represents that the employee was provided with and took all required rest and
16 meal breaks. (*Id.*)

17 Dress Barn contends that Plaisted signed an acknowledgment of Dress Barn's
18 meal and break policies on June 4, 2009, upon beginning employment. (Hinck Decl.
19 Ex. A.) While working at the Alpine store, she took all of her meal and rest breaks.
20 (Plaisted Dep. 38:1–19.) As store manager at the Mira Mesa store, Plaisted had a
21 "heightened responsibility" to lead by example in reporting and accurately recording
22 her own time. (Plaisted Dep. 73:19–74:11.) She scheduled her own hours and breaks
23 and was responsible for taking them. (*Id.* at 210:25–211:13, 66:22–24.) Indeed, no
24 one in Dress Barn's management ever told Plaisted to work without recording her
25 time. (Plaisted Dep. 74:13–22, 164:16–25, 165:10–13.) She was never told to skip a
26 rest break (*id.* at 213:22–24), and she could not recall at her deposition whether
27 anyone ever told her not to take a meal break. (*Id.* at 300:4–18.)
28 / / /

1    Like other employees, Plaisted was required to review her Final Payroll Reports and sign off on them. She signed at least 67 of them under penalty of perjury indicating that her recorded hours were correct and that she was provided with and took all required breaks. (Hinck Decl. Ex. D.) As for the reports for the other weeks she worked, Plaisted testified she did not sign them because she was either too busy or forgot. (Plaisted Dep. 185:8–186:12.) It is undisputed that Plaisted never contacted Dress Barn HR during her employment. (SUF 29.)

Plaisted argues in opposition that she essentially had too much work to do in too little time, and that pressure somehow necessitated her to work through her rest or meal breaks, or both. (Opp'n 6.) By July or August of 2008, Dress Barn reclassified all of its California store managers as hourly instead of salaried employees. (Hinck Dep. 11:2–6.) However, the store managers' workload did not change. (LaFave-Hill Dep. 122:1-7.) On occasion, Dress Barn required store managers to engage in marketing activities outside of the store and to conduct in-store "VIP parties." (Fichtner Dep. 46:3–25; LaFave-Hill Dep. 134:6–8.)

With respect to rest and meal breaks, if only 2 employees are working at any given time, Dress Barn policy is that neither can leave the store. (*See* Hinck Dep. 18:20–25.) Sometimes even when Plaisted had sufficient break coverage, her "managerial job" necessitated that she work through her breaks. (Plaisted Dep. 93:13–94:8.) When Plaisted inquired of her District Manager, Sharon Stubbs, how other store managers accomplished all of their work with limited hours, Stubbs allegedly implied that other managers worked off the clock. (Plaisted Dep. 74:24–75:25.) Further, although she could not remember the exact dates, Plaisted claims that she informed Stubbs that she had worked off the clock 1 or 2 times doing scheduling and performance reviews at home. (*Id.* at 76:7–77:3.) It is undisputed that Plaisted did not record any of her allegedly missed rest or meal breaks. (SUF 47.)

Even construing all of this evidence in the light most favorable to Plaisted, the Court finds that there is no genuine issue of material fact regarding Dress Barn's rest-

and meal-break policies or any supposed pressure by management for Plaisted to work off the clock. Dress Barn carried its burden of establishing an absence of genuine issues of material fact, *Celotex Corp.*, 477 U.S. at 323–24, because its formal policy conforms to California law in that it requires employees who work over 5 hours to take a meal break of not less than 30 minutes.[2] (Hinck Decl. Exs. A, C.) Indeed, even Plaisted herself signed off on this policy numerous times. If she had worked off the clock, Plaisted, as the store manager, had the ability to enter those extra hours into Dress Barn's timekeeping system. But she never did, nor did she personally keep any records of any supposedly skipped rest or meal breaks.

Given that neither Dress Barn's formal policies nor its management ever pressured Plaisted to work through any of her rest or meal breaks or to work off-the-clock overtime, Dress Barn is entitled to judgment as a matter of law on Plaisted's meal- and rest-break claims. While she might have felt overwhelmed by running a store and managing employees, Dress Barn did not have a legal obligation to "ensure that the [Plaisted] d[id] no work" during her breaks. *Brinker Rest. Corp.*, 53 Cal. 4th at 1034. The choice, as the evidence shows, was all hers. Further, no reasonable jury could conflate a slight implication from Stubbs that some managers worked off the clock with a Dress Barn scheme designed to undercut its formal written policies. *See Anderson*, 477 U.S. at 253.

With respect to Plaisted's off-the-clock overtime claim, the Court finds that there is likewise no genuine issue of material fact as to Dress Barn's lack of actual or constructive knowledge of any of her supposed off-the-clock work. *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) (holding that and employer's liability for off-the-clock overtime hinges on such knowledge). Dress

---

[2] In Plaisted's hefty Statement of Genuine Issues of Material Fact, she either disputes or objects to almost every fact Dress Barn lists. (ECF No. 59.) She fills her purported disputes with copious citations to the depositions and declarations she submitted. (*Id.*) However, after reviewing the evidence provided, the Court finds that Plaisted's objections are unfounded, misplaced, or simply incorrect, and are accordingly overruled.

1  Barn did not actually know Plaisted was working off the clock because she signed off
2  on her Final Payroll Records for at least 67 weeks indicating that her recorded hours
3  were correct and that she was provided with and took all required breaks.[3] Some of
4  these reports also certified that she conducted no off-the-clock work.

5  Thus, there is not a scintilla of evidence to show that Dress Barn knew or
6  should have known that Plaisted was working off the clock. Therefore, the Court
7  finds that Dress Barn is entitled to judgment as a matter of law as to the overtime
8  claim. *See White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1083 (N.D. Cal. 2007)
9  (granting summary judgment in favor of an employer when an employee failed to tell
10 anyone he supposedly worked off-the-clock overtime).

**B.    Accrued Wage and Vacation Time upon Termination**

12  Plaisted further alleges that Dress Barn failed to pay her for all of her final
13  wages and accrued vacation time upon termination of her employment, and that she
14  was not paid at least bimonthly with accurate wage statements.

15  Under California Labor Code section 203(a), an employee is entitled to waiting-
16 time penalties if an employer "willfully fails to pay . . . any wages of an employee
17 who is discharged or who quits." California law defines "willful" in this context as
18 when "an employer has intentionally failed or refused to perform an act which was
19 required to be done." *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201
20 (2008). Further, an employee must be paid for all accrued vacation time upon
21 termination of employment. Cal. Labor Code § 227.3. In order to recover for
22 inaccurate wage statements, an employee must "suffer[] injury" as the result of a
23 "knowing and intentional failure" by the employer to comply with the wage-statement
24 requirements. *Id.* § 226(e)(1); *see also id.* § 226(a). Lastly, an employer must pay all
25 wages earned by a person at least twice each calendar month, *id.* § 204(a), though

---

[3] Contrary to Plaisted's argument, requiring employees to *either* sign their Final Payroll Records *or* to describe why they disagree with them is not an "execution of release" within the meaning of California Labor Code section 206.5.

there is no private right of action under that section. *Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1136 (N.D. Cal. 2011).

It is undisputed that Plaisted received weekly paychecks from the beginning of her employment up until about April 23, 2011. (SUF 34; Plaisted Dep. 71:20–25.) After that, Dress Barn transferred to a biweekly pay system. (Plaisted Dep. 72:1–5.) Plaisted utilized direct deposit throughout her entire tenure with Dress Barn. (Plaisted Dep. 72:6–9.) Dress Barn argues that Plaisted never complained to anyone that her pay was inaccurate either before or after her termination. (*Id.* at 156:21–25, 286:25–287:6.) Further, Plaisted could not recall at her deposition any exact dates on which she worked without clocking in. (*Id.* at 76:22–77:16, 163:25–164:11.) She received her final wages two weeks after her employment with Dress Barn ended. (*Id.* at 163:25–164:11.)

But Plaisted contends that because Dress Barn was supposedly aware that she worked off the clock (*see id.* at 76:7–77:3), she is entitled to waiting-time penalties for unpaid wages. (Opp'n 14.) Dress Barn's alleged knowledge of her off-the-clock work also shows, she claims, that there were inaccuracies in her wage statements and in Dress Barn's computation of her vacation time, as Dress Barn's vacation-time policy provides that an associate accrues vacation time based upon the average hours worked. (Sokolowski Decl., Ex. 20.) Further, Plaisted contends that since she worked some time off the clock, she was not paid all her wages at least twice monthly. (Plaisted Dep. 76:7–77:3; Opp'n 16–17.)

Construing all evidence in the light most favorable to Plaisted, the Court finds that there is no genuine issue of material fact as to these four claims, and Dress Barn is therefore entitled to judgment as a matter of law. Given that Plaisted never complained to anyone at Dress Barn that her wages were inaccurate, Dress Barn had no way to know if Plaisted was ever owed any wages for off-the-clock time allegedly worked. Plaisted cannot then prove that Dress Barn ever "willfully" or "intentionally" failed to pay her for any outstanding wages, if any. Cal. Labor Code § 203(a).

1  Similarly, since Plaisted never brought any errors to Dress Barn's attention, it cannot
2  be said that Dress Barn knowingly and intentionally failed to comply with the wage-
3  statement requirements of Labor Code section 226(a).

4        Plaisted's alleged vacation-time deficiency fails for the same reason.  Her
5  vacation time was calculated based on the hours she reported, so Dress Barn complied
6  with California Labor Code section 227.3.  Plaisted received her final paycheck, and
7  up until the filing of this lawsuit, she never complained about any inaccuracies.

8        Lastly, there is no serious dispute that Plaisted received a paycheck either
9  weekly or biweekly.  The Court therefore finds that Dress Barn complied with Labor
10 Code section 204(a), even assuming there is a private right of action under that
11 section.

12 **C.    Seating Claim, PAGA Penalties, and UCL Claim**

13       Next, despite Dress Barn's arguments to the contrary, Plaisted continues to
14 stand behind her claim that Dress Barn failed to provide her with reasonable seating in
15 violation of Title 8 of the California Code of Regulations, section 11070, subdivision
16 14.  But since she failed to comply with the Private Attorney General Act ("PAGA")
17 notification requirements, her claim has no legs to stand on.

18       PAGA requires that, in order for an "aggrieved employee" to bring a civil
19 action under the Act, she must first  "give written notice by certified mail to the Labor
20 and Workforce Development Agency and the employer of the *specific provisions of*
21 *this code* alleged to have been violated, including the facts and theories to support the
22 alleged violation."  Cal. Labor Code § 2699.3(a)(1) (emphasis added).  Dress Barn
23 argues that Plaisted failed to include section 11070, subdivision 14 in her letter to the
24 Labor and Workforce Development Agency ("LWDA").  (Mot. 14–15; *see also*
25 Compl. Ex. A.)  In response, Plaisted contends that she did not have to include "every
26 potential fact or every future theory" in her LWDA letter, *see Cardenas v. McLane*
27 *Foodservices, Inc.*, 796 F. Supp. 2d 1246, 1260 (C.D. Cal. 2011), and Dress Barn has
28 been on notice of her seating claim since early 2012.  (Opp'n 17–19.)


The Court finds that Plaisted failed to exhaust her administrative remedies as required by California Labor Code section 2699.3. A review of the LWDA letter confirms that she did not include an alleged violation of section 11070, subdivision 14—a "specific" provision. Contrary to Plaisted's contention, general notice is not the criterion by which PAGA claims are assessed. Consequently, Dress Barn is entitled to judgment as a matter of law as to the seating claim.

Further, given that Dress Barn is entitled to judgment as a matter of law as to all of Plaisted's break, wage, overtime, vacation, and seating claims (claims 1 through 8), Plaisted cannot establish that she is an "aggrieved employee" and accordingly cannot recover any PAGA penalties. *See* Cal. Labor Code § 2699(c) (defining "aggrieved employee" as "any person who was employed by the alleged violator and against whom *one or more of the alleged violations* was committed" (emphasis added)). The Court therefore finds that Dress Barn is entitled to judgment as a matter of law on Plaisted's tenth claim.

Finally, Plaisted's Unfair Competition Law ("UCL") claims similarly stand defeated. Each one is predicated upon alleged violations of the California Labor Code (ECF No. 1, Ex. A.). But since the Court finds that Dress Barn is entitled to judgment in its favor on all such supposed violations, Plaisted's UCL claim correspondingly fails. *See Prachasaisoradej v. Ralphs Grocery Co.*, 42 Cal. 4th 217, 244 (2007).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## V. CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment (ECF No. 49) is **GRANTED** in its entirety. Defendant's application for leave to file further objections and a reply to Plaisted's sur-reply (ECF No. 76) is therefore **DENIED AS MOOT**. A judgment will issue.

**IT IS SO ORDERED.**

January 25, 2013

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**